**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| T. K. BENSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 06-CV-203-TCK-FHM |
| ) | |
| MARTY SIRMONS, Warden, ) | |
| ) | |
| Respondent. ) | |

**OPINION AND ORDER**

Before the Court is Petitioner's amended 28 U.S.C. § 2254 petition for a writ of habeas corpus (Dkt. # 12). Respondent filed a response (Dkt. # 17) and provided the state court records (Dkt. #s 18 and 19) necessary for adjudication of Petitioner's claims. Petitioner filed a reply (Dkt. # 23) to Respondent's response. On April 17, 2009, Petitioner filed a "motion to stay" (Dkt. # 25) and a "motion to amend" (Dkt. # 26). For the reasons discussed below, the Court finds the amended petition shall be denied. In addition, Petitioner's motions to stay and to amend shall be denied. The Court notes that since the amended petition replaces and supersedes the original petition, the original petition (Dkt. # 1) shall be declared moot.

*BACKGROUND*

On July 7, 2003, at approximately 11:20 p.m., Beverly Ramirez, the house manager at El Chico's Mexican Restaurant, located near 51st St. and S. Lewis Ave., in Tulsa, Oklahoma, had finished her closing duties and was exiting the restaurant accompanied by her husband, Greg, and eight (8) year old daughter, Shawna. They were approached by two men armed with semi-automatic handguns. After forcing the Ramirez family back into the restaurant at gunpoint, they took money from the safe, put it in Beverly Ramirez's purse, and fled with the purse in a getaway car. Greg

Ramirez immediately called the police with a description of the getaway car. The police located the car and observed the passenger jump out and flee on foot. A K-9 unit followed the trail of the suspect to a backyard shed. Police also tracked a trail of evidence, including currency, a bank bag, and Beverly Ramirez's purse, through the neighborhood to the shed. The police found Petitioner T.K. Benson hiding in the shed with a set of keys belonging to Greg Ramirez at his feet. After his arrest, Petitioner gave a videotaped confession describing his role in the armed robbery.

Based on those events, Petitioner was charged with Robbery With a Firearm, After Former Conviction of a Felony, in Tulsa County District Court, Case No. CF-2003-3195. Petitioner was tried by a jury and found guilty as charged. At the conclusion of a second stage proceeding, the jury recommended a sentence of eighteen (18) years imprisonment. On March 25, 2004, the trial court sentenced Petitioner in accordance with the jury's recommendation. The Court also imposed a fine of $2,500. Petitioner was represented at trial by attorney Shena Burgess.

Petitioner appealed his convictions and sentences to the Oklahoma Court of Criminal Appeals ("OCCA"). On appeal, Petitioner was represented by attorney Stuart Southerland. He raised four (4) propositions of error as follows:

> Proposition 1: Appellant's statements after asserting his right to counsel should have been suppressed pursuant to the Fifth and Sixth Amendments to the United States Constitution, as well as corresponding provisions of the Oklahoma Constitution.
>
> Proposition 2: The trial court improperly restricted voir dire in violation of District Court Rule Six and the due process provisions of the United States and Oklahoma Constitutions.
>
> Proposition 3: It was error to refuse to instruct the jury as to the applicability of 21 O.S.2001, § 13.1. In the alternative, this court should at the very least advise trial judges that it is within their discretion to instruct a jury that a defendant will serve 85% of his sentence prior to becoming eligible for parole.

Proposition 4: The accumulation of error during Appellant's trial requires reversal.

(Dkt. # 17, Ex. 1). In an unpublished summary opinion, filed August 1, 2005, in Case No. F-2004-310, the OCCA determined that none of Petitioner's claims was meritorious and affirmed the Judgment and Sentence of the trial court. (Dkt. # 17, Ex. 3). Petitioner did not file a petition for writ of *certiorari* in the United States Supreme Court and did not seek post-conviction relief in the state courts prior to filing his original habeas corpus petition. See Dkt. # 12.

Petitioner filed the instant habeas corpus action on April 13, 2006 (Dkt. # 1). In response to the petition, Respondent filed a motion to dismiss for failure to exhaust state remedies (Dkt. # 6). By Order filed January 26, 2007 (Dkt. # 11), the Court determined that the petition was subject to dismissal because it contained unexhausted claims. However, because a subsequent return to federal court after exhausting state remedies would be barred by the one-year statute of limitations applicable to habeas corpus petitions, the Court allowed Petitioner to file an amended petition to delete his unexhausted claims. Petitioner complied with the Court's directive and filed his amended petition (Dkt. # 12) on February 14, 2007. In response to the amended petition, Respondent contends Petitioner is not entitled to habeas corpus relief and that the petition should be denied.

## *PRELIMINARY CONSIDERATIONS*

Before analyzing the claims asserted in the amended petition, the Court shall first address Petitioner's motions to stay and to amend (Dkt. #s 25 and 26), filed in this matter on April 17, 2009. In his motion to stay, Petitioner writes "[t]he petitioner asks this honorable court to allow him time to finish exhausting his state remedies. Thank you." See Dkt. # 25. Significantly, Petitioner has failed to identify his unexhausted constitutional claims in his motion to stay. As a result, Petitioner

has failed to convince the Court that this matter should be stayed and, for that reason, Petitioner's request for a stay of these proceedings shall be denied.

As to the motion to amend, the Court notes that Petitioner failed to send his proposed second amended petition along with his motion as required by the Court's Local Rules. See LCvR9.2(c). In the motion to amend, Petitioner does, however, identify three propositions of error, as follows: (1) Petitioner's Miranda rights have been violated; (2) ineffective assistance of counsel; and (3) prosecutorial misconduct/improper comments during trial resulted in the denial of a fair trial. See Dkt. # 26. The first proposition of error identified by Petitioner in the motion to amend is raised in the amended petition (Dkt. # 12) and is presently before the Court. The other two proposed grounds of error were raised in the original petition and were determined by the Court to be unexhausted.[1] They were the claims that were omitted in the first amended petition. Thus, the Court finds Petitioner seeks leave to file a second amended petition to add two (2) new propositions of error identified as propositions two and three in the motion to amend.

Consideration of Petitioner's motion to amend petition is governed by Fed. R. Civ. P. 15(c) (providing conditions determining whether an amended pleading relates back to the date of the original pleading). See United States v. Espinoza-Saenz, 235 F.3d 501 (10th Cir. 2000). The Court finds that grounds 2 and 3 identified in the motion to amend are claims that were purposefully omitted from the amended petition. Because Petitioner seeks to add these claims by filing a second amended petition, the Court finds they do not relate back. See Woodward v. Williams, 263 F.3d 1135, 1142 (10th Cir. 2001) (citing Espinoza-Saenz, 235 F.3d at 505, for proposition that "an

---

[1] Nothing submitted by Petitioner suggests that the two (2) claims have been presented to the OCCA and are now exhausted.

untimely amendment to a § 2255 motion which, by way of additional facts, clarifies or amplifies a claim or theory in the original motion may, in the District Court's discretion, relate back to the date of the original motion *if and only if* the original motion was timely filed and *the proposed amendment does not seek to add a new claim or to insert a new theory into the case*"); see also United States v. Duffus, 174 F.3d 333 (3d Cir. 1999).

Despite the Court's prior ruling discussing the one-year limitations period, Petitioner apparently does not grasp the significance of the one-year statute of limitations. See 28 U.S.C. § 2244(d) (as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA")). Pursuant to 28 U.S.C. § 2244(d)(1)(A), a habeas corpus petition must be filed within one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." In this case, Petitioner timely filed his original petition.[2] He then filed his amended petition pursuant to an Order of the Court. His "motion to amend" was not filed until approximately 3 years after filing the original petition, or well after expiration of the one-year limitations period. Since Petitioner's new claims do not relate back, the Court finds that, unless Petitioner is entitled to tolling of the limitations period, to allow further amendment in this case by

---

[2] As determined in the Court's Order denying Petitioner's earlier motion to stay, see Dkt. # 11, Petitioner's conviction became final for purposes of the one-year limitations period prescribed by 28 U.S.C. § 2244(d)(1)(A), on October 31, 2005, after the 90 day period for seeking *certiorari* review in the United States Supreme Court had lapsed. See Locke v. Saffle, 237 F.3d 1269, 1273 (10th Cir. 2001). Therefore, Petitioner's deadline for filing a timely petition for writ of habeas corpus was October 31, 2006. See United States v. Hurst, 322 F.3d 1256 (10th Cir. 2003) (applying Fed. R. Civ. P. 6(a) to calculate AEDPA deadline). Absent a tolling event, see 28 U.S.C. § 2244(d)(2), a petition filed after October 31, 2006, would be time-barred. The original petition in this case was filed April 13, 2006, or well in advance of the deadline. However, during the pendency of this action, the deadline has passed. As a result, the new claims identified by Petitioner in his motion to amend are time-barred since the motion to amend was not filed until April 17, 2009, or more than two years after expiration of the one-year limitations period.

adding new claims would frustrate the intent of Congress in enacting the statute of limitations provisions of the AEDPA.

The Court finds no statutory or equitable basis for tolling the limitations period in this case. First, the pendency of the instant federal case does not serve to toll federal limitations period under 28 U.S.C. § 2244(d)(2). Duncan v. Walker, 533 U.S. 167 (2001) (holding that a federal habeas petition is not an "application for State post-conviction or other collateral review" within the meaning of § 2244(d)(2)). Second, although the statute of limitations contained in § 2244(d) may be subject to equitable tolling where extraordinary circumstances beyond the prisoner's control prevent a petitioner from timely filing his petition, see Miller v. Marr, 141 F.3d 976, 978 (10th Cir. 1998), Petitioner is not entitled to equitable tolling in this case. Equitable tolling may be appropriate where a prisoner is actually innocent. Id. However, to be entitled to equitable tolling, a habeas petitioner asserting actual innocence must also demonstrate that he has pursued his federal claims diligently. Id. Petitioner does not claim to be actually innocent. Furthermore, Petitioner did not exercise diligence in pursuing the new claims identified in the motion to amend. According to the docket sheet for Tulsa County District Court, Case No. CF-2003-3195, viewed at www.oscn.net, Petitioner first began to exhaust state remedies by commencing a post-conviction proceeding in the state district court on July 5, 2007, or more than eight (8) months after expiration of the limitations period.[3] Petitioner offers no explanation for his delay in pursuing his additional constitutional claims. As a result, the Court finds no basis for equitably tolling the limitations period in this case.

---

[3] A collateral petition filed in state court after the limitations period has expired no longer serves to toll the statute of limitations. See Fisher v. Gibson, 262 F.3d 1135, 1142-43 (10th Cir. 2001).

Therefore, the "motion to amend" shall be denied. The Court will consider only the claims asserted in the amended petition (Dkt. # 12).

## *ANALYSIS*

### A. Exhaustion/Evidentiary Hearing

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b) and (c). See Rose v. Lundy, 455 U.S. 509, 510 (1982). Respondent concedes and the Court agrees that the exhaustion requirement of 28 U.S.C. § 2254(b) is satisfied in this case. In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing. See Michael Williams v. Taylor, 529 U.S. 420 (2000).

### B. Claims adjudicated by the OCCA

The AEDPA amended the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions. Under the AEDPA, when a state court has adjudicated a claim a petitioner may obtain federal habeas relief only if the state decision "involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001). In this case, the OCCA adjudicated Petitioner's claims, as identified in the amended petition, on direct appeal. Therefore, the claims shall be reviewed pursuant to § 2254(d).

#### 1. Violation of Miranda

As his first allegation of error, Petitioner complains that his confession to Tulsa Police Detective Bob Little was made after he asserted his right to counsel in violation of the constitutional

protections set out in Miranda v. Arizona, 384 U.S. 436 (1966), and should have been suppressed. The record reflects that prior to trial, the court held a Jackson v. Denno[4] hearing to determine the voluntariness of Petitioner's confession. See Tr. Trans. Vol. 1 of 4 at 3-31. Detective Little testified that he interviewed Petitioner on July 8, 2003, at approximately 2:30 a.m. Id. at 5. He read Petitioner his Miranda rights. Id. at 5-6. After being advised of his right to counsel, Petitioner stated "I want an attorney." Id. at 7. Detective Little continued reading the remainder of Petitioner's rights. Id. As he prepared to leave, Detective Little explained that he could not talk to Petitioner since he had requested an attorney. Id. At that point, Petitioner asked if he could talk to him now without an attorney and then later with an attorney. Id. at 8. Detective Little told Petitioner that he could talk to him only if he requested to talk. Detective Little asked, "are you requesting to talk to me now at this time without an attorney?" Petitioner answered, "yes." Id. Detective Little proceeded to read the rights waiver card to Petitioner who initialed beside each right indicating that he understood that he was waiving his rights. Id. Petitioner proceeded to give a videotaped confession of his role in the armed robbery of the El Chico restaurant.

At the conclusion of the Jackson v. Denno hearing, the trial court judge found that the detective did not improperly continue questioning Petitioner after he asked for an attorney; instead, he merely continued to inform Petitioner of his rights. Id. at 21. He further found that the detective did not begin interviewing Petitioner until after Petitioner initiated further discussion with the detective. Id. As a result, the trial court judge denied Petitioner's motion to suppress and allowed

---

[4]Jackson v. Denno, 378 U.S. 368, 376 (1964) (holding that when a defendant challenges the voluntariness of a confession, the voluntariness issue should be decided by a separate hearing).

Detective Little to testify at trial concerning the videotaped confession. See Tr. Trans. Vol. III of IV at 71-93.

On direct appeal, Petitioner argued that his statement should have been suppressed. In rejecting this claim, the OCCA held as follows:

> while Appellant did make a clear request for counsel during a custodial interview, the continued conversation between Appellant and the detective did not constitute "interrogation"; it was not designed to elicit any incriminating response from Appellant. *Rhode Island v. Innis*, 446 U.S. 291, 299-300, 100 S.Ct. 1682, 1689-90, 64 L.Ed.2d 297 (1980); *Ullery v. State*, 1999 OK CR 36, ¶¶ 14-21, 988 P.2d 332, 343; *Sadler v. State*, 1993 OK CR 2, ¶ 32, 846 P.2d 377, 384-85. Appellant's subsequent request to speak without counsel was met with further warnings and was voluntary. Furthermore, any error in admitting Appellant's incriminating statements was harmless beyond a reasonable doubt, given the overwhelming evidence of guilt. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *Lewis v. State*, 1998 OK CR 24, ¶ 37, 970 P.2d 1158, 1171; *Coleman v. State*, 1983 OK CR 101, ¶ 17, 668 P.2d 1126, 1132, *cert. denied*, 464 U.S. 1073, 104 S.Ct. 986, 79 L.Ed. 2d 222 (1984).

(Dkt. # 17, Ex. 3).

The Fifth Amendment provides that no person shall be compelled in any criminal case to be a witness against himself. In Miranda v. Arizona, 384 U.S. 436 (1966), the Supreme Court concluded that "without proper safeguards the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." Id. at 467. Upon invoking a right to counsel, a defendant is not subject to further interrogation until counsel is available unless he "himself initiated further communication, exchanges, or conversations with the police." Edwards v. Arizona, 451 U.S. 477, 484-85 (1981). If the police initiate subsequent contact without the presence of counsel, his statements will be presumed involuntary. See McNeill v. Wisconsin, 501 U.S. 171, 177 (1991).

In this case, the trial court determined that it was Petitioner who reinitiated communication with Detective Little, after previously invoking his right to counsel, by asking Detective Little if he could talk now without an attorney and again later with an attorney. Furthermore, the OCCA found that Petitioner voluntarily asked to speak to Detective Little without an attorney after initially requesting an attorney. Those are factual findings to which this Court affords a presumption of correctness under 28 U.S.C. § 2254(e). Pickens v. Gibson, 206 F.3d 988, 994 (10th Cir. 2000). Petitioner has failed to rebut, by clear and convincing evidence, the presumption of correctness afforded the state courts' factual findings that after Petitioner indicated he wanted an attorney, no interrogation took place until Petitioner himself initiated further communication with Detective Little. In addition, Petitioner has failed to demonstrate that the OCCA's adjudication of this claim was contrary to or an unreasonable application of Supreme Court law. 28 U.S.C. § 2254(d). He is not entitled to habeas corpus relief on this ground.

**2. Improper *voir dire***

Petitioner also asserts that the trial court improperly restricted questioning by defense counsel during *voir dire*. The record reflects that during *voir dire*, defense counsel asked a juror whether it would be accurate to say "that a hundred guilty men should go free, before one innocent person goes to prison?" See Tr. Trans. Vol. 2 of 4 at 45. At the bench, the trial court judge asked defense counsel if she intended to be asking the jurors whether they believed in the presumption of innocence. Id. at 46. When defense counsel answered "yes," the trial court judge directed counsel to rephrase the question to avoid eliciting facts. Id. at 47. Defense counsel resumed *voir dire* by stating that the defendant is presumed innocent and asking the jurors about the presumption of innocence. Id. at 47-48. On direct appeal, Petitioner asserted that the trial court abused its discretion

10

in asking defense counsel to rephrase a single hypothetical question. The OCCA rejected the claim, citing Cannon v. State, 961 P.2d 838, 845 (Okla. Crim. App. 1998), and finding no abuse of discretion.

The Sixth Amendment, as applicable to the states through the Fourteenth Amendment, and principles of due process guarantee a criminal defendant in state court an "impartial jury." Ristaino v. Ross, 424 U.S. 589, 595 n. 6 (1976) (citations omitted). The Supreme Court has stressed that the trial court is granted wide discretion in conducting *voir dire* in the area of pretrial publicity and in other areas of inquiry that might tend to show juror bias. Mu'min v. Virginia, 500 U.S. 415, 427 (1991). "*Voir dire* examination serves the dual purposes of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges." Id. at 431.

Nothing provided by Petitioner or in the record suggests that the trial court's instruction to defense counsel during *voir dire* in any way impeded his right to an impartial jury. The record also demonstrates that defense counsel used only 4 of 5 peremptory challenges indicating that the restriction imposed by the trial court judge did not impact counsel's exercise of peremptory challenges. Petitioner has failed to demonstrate that the OCCA's adjudication of this claim was contrary to or an unreasonable application of Supreme Court law. 28 U.S.C. § 2254(d). He is not entitled to habeas corpus relief on this claim.

### 3. Failure to instruct on the 85 Percent Rule

Petitioner also claims that the trial court erred in refusing to instruct on the applicability of Okla. Stat. tit. 21, § 13.1. The OCCA rejected this claim on direct appeal, citing Miller v. State, 522 P.2d 642, 644 (1974), and finding that "the jury was properly instructed on all the law necessary to discharge its duty of recommending punishment." See Dkt. # 17, Ex. 3. The OCCA further noted

that "[t]he trial court's expressed reasons for declining Appellant's requested instruction show that its decision was not an abuse of discretion." Id.

Under Oklahoma's 85 percent rule, "[p]ersons convicted of: . . . [r]obbery with a dangerous weapon as defined in Section 801 of this title . . . shall be required to serve not less than eighty-five percent (85%) of any sentence of imprisonment imposed by the judicial system prior to becoming eligible for consideration for parole." Okla. Stat. tit. 21, § 13.1 (2002). In 2006, after Petitioner was convicted and sentenced, the OCCA held that trial courts should instruct jurors on the 85 percent rule prior to sentencing. Anderson v. State, 130 P.3d 273, 283 (Okla. Crim. App. 2006). The Anderson court, however, specified that its holding was prospective and did not apply to "cases before this decision." Id.

The United States Supreme Court has not held that the Constitution requires the jury to be informed of a defendant's parole eligibility in a non-capital case. Indeed, the Court has only held that the Constitution requires such information to be provided to a jury in a limited set of capital cases. See, e.g., Simmons v. South Carolina, 512 U.S. 154 (1994) (holding, in a capital case, that the jury must be informed of parole eligibility when: (1) the defendant, if sentenced to life, will never become legally eligible for parole; and (2) the prosecution argues that the defendant presents a future danger). In light of this precedent, Petitioner has failed to demonstrate constitutional error. 28 U.S.C. § 2254(a). The trial court's failure to instruct on the 85 percent rule did not render Petitioner's trial fundamentally unfair in a constitutional sense. See Taylor v. Parker, 276 Fed.Appx. 772, 775-76 (10th Cir. 2008) (unpublished) (in a non-capital case, rejecting petitioner's contention that he was entitled to habeas relief because the trial court failed to instruct the jury on Oklahoma's 85 percent rule). Petitioner's request for habeas corpus relief on this ground shall be denied.

## *CONCLUSION*

After carefully reviewing the record in this case, the Court concludes that the Petitioner has not established that he is in custody in violation of the Constitution or laws or treaties of the United States. His petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1. The original petition (Dkt. # 1) is **declared moot**.

2. Petitioner's "motion to stay" (Dkt. # 25) is **denied**.

3. Petitioner's "motion to amend" (Dkt. # 26) is **denied**.

4. The amended petition for a writ of habeas corpus (Dkt. # 12) is **denied**.

5. A separate Judgment shall be entered in this case.

DATED THIS 9th day of July, 2009.

TERENCE KERN
UNITED STATES DISTRICT JUDGE